PARRISH & SHAW
AN ASSOCIATION OF ATTORNEYS

775 RIDGE LAKE BLVD.
SUITE 145
MEMPHIS, TN 38120

TELEPHONE 901-766-4388
FACSIMILE 901-766-4389
EMAIL PARRISH@PARRISHANDSHAW.COM

September 15, 2010

John D. Fabian, Esq.
Assistant United States Attorney
United States Attorney's Office
167 N. Main Street, Suite 800
Memphis, Tennessee 38103

*Via Email John.Fabian@usdoj.gov*

Re:  **United States v. Williams**, *No. 2:10cr20174-M1 (W.D. Tenn., Memphis)*

Dear John:

Having heard nothing to the contrary, we are presently scheduled to be in Judge McCalla's courtroom this afternoon at 3:30 p.m. for Mr. Williams to change his plea to guilty. Unless otherwise advised, we will be present as scheduled.

Mr. Williams, under any circumstances, cannot financially afford to go to trial, but, even if he could, the risk of an adverse verdict against him is so great that his best interest would be sacrificed by a trial. There is sufficient evidence against Mr. Williams, especially given the minimal scienter requirements of the law, that a jury verdict against Mr. Williams would be impregnable.

So, Mr. Williams' decision to plead guilty is not, by any stretch, a decision to plead guilty simply because he is without funds to pay for a trial. Rather, a trial, for Mr. Williams, would be imprudent.

Having said that, based on information that I have come to appreciate since I last spoke either with you or Carroll Andre', leads me to believe that a jury verdict of acquittal would be equally impregnable, even if the United States had the right to appeal. I am compelled to expound.

Since I last had any interaction with you or Carroll, I have had quite a bit of interaction with the EPA civil officials and, before then, with one Tennessee Department of Environment and Conservation (TDEC) investigator. This included a deposition taken by David Harbin, Esq., on August 24, 2010, after my face-to-face meeting with Mr. Harbin and Ms. Richardson during which we spoke concerning Mr. Williams and the investigation of his business. After that meeting, Mr.

Ltr. to John D. Fabian, Esq.
September 15, 2010
Page 2 of 4

Harbin and Ms. Richardson spent as much of the remainder of the day on site at Mr. Williams' business, interacting with him, as they wished.

Mr. Williams has cooperated in every way asked or beyond to assist the EPA civil side get to the bottom of the issues with which they are concerned. These are the same facts that resulted in Mr. Williams' indictment.

Because Mr. Williams could not afford to pay me to do so, I had not planned to sit through Mr. Williams' deposition. But, in spite of my plans, I attended and participated in the deposition. Ms. Richardson, the EPA Project Manager for the American Drum Superfund site, was in attendance as was Steve Spurlin, the EPA on-scene coordinator for EPA Region 4 who, as I understand it, was in charge of the EPA on-the-scene investigation involving Mr. Williams. Both Mr. Spurlin and Ms. Richardson participated in the deposition by putting questions, when they desired, and providing explanations helpful in making certain that everything was covered.

During the deposition, there were bits of information not then available but which Mr. Williams was asked to research and provide additional information and/or documentation. Mr. Williams has abided the requests, as he said he would, and gathered from his books and records, and other sources the information needed to augment what he was unable to provide by deposition.

After having heard Mr. Williams' sworn testimony, participated in Mr. Williams' preparation for his deposition and considering the documentation, plus interacting with the civil side EPA persons, it has become my conviction that, even with the minimal scienter requirements, a juror would be justified in voting not guilty.

This is laying aside all appeals to sympathy. If the jurors were machines and all of the facts were stipulated, I am now convinced that a juror would be justified in a not guilty verdict. Again, however, I state that, if a juror was a machine and considered the case on stipulated facts, the juror could justify a guilty vote.

I do not wish to put any words in the mouth of any of the EPA officials. Mr. Harbin, while he has emphasized at length that there is a Chinese Wall between the EPA civil side and the EPA criminal side, took time to come to my office, without urging from me, to speak to me one-on-one. He said: "If I am asked, I will tell the truth."

He did not elaborate but, in context, I believe that I am not taking liberties to interpret that he meant that, if you or another person involved in the criminal prosecution of Mr. Williams asked Mr. Harbin what he believes about what Mr. Williams did, Mr. Harbin will be forthcoming.

f:\clients\williams.johnnie\correspondence\ltr. to john fabian 9.15.10.doc

**Exhibit A**

Ltr. to John D. Fabian, Esq.
September 15, 2010
Page 3 of 4

    Mr. Harbin did not share with me and I did not quiz him as to what his beliefs were. However, in a separate conversation, Mr. Harbin, in substance, stated: "We are not after Mr. Williams, we are after the persons who placed on Mr. Williams' property the containers that had the hazardous materials in them."

    I did not write down the exact words that Mr. Harbin said, but what I put in quotation marks is my memory, though I stand to be corrected if I have missed a word or two. Mr. Harbin went on to state that he would need to get from Mr. Williams an affidavit verifying his financial status, i.e., his lack of resources.

    I interpreted Mr. Harbin's comment to mean that EPA (at least on the civil side) was fixed on making claims against certain crop dusters and other persons who seemed to use Mr. Williams' site as a place to dump containers with hazardous substances within them. However, I leave it to Mr. Harbin to speak for himself.

    Though I engaged in cordial exchanges with Mr. Spurlin and Ms. Richardson, neither made any comment, in my presence, about what they consider to be the culpability of Mr. Williams. Perhaps, Mr. Harbin has had such interaction with them. All I can say is that I believe that it might benefit you to speak with them.

    Some weeks back, I did speak with a TDEC investigator about the investigation. She was forthcoming about the history of the investigation that has led to the indictment of Mr. Williams. She was cautious, understandably, to express her opinions, but she did say that she was surprised to hear that Mr. Williams had been indicted. She added that, in her years in her work, she had never seen a criminal indictment in a case like that of Mr. Williams.

    No matter what happens, from here, Mr. Williams will remain cooperative with EPA, criminal prosecutors and anybody else who has need of his cooperation. In my experience, Mr. Williams is an honest man who will tell the truth, as he knows it, to whomever the truth is important. Mr. Williams and I share the common trait of not holding our cards close to our chest.

    At one point, you mentioned to me that Mr. Williams had lied to one investigator about something. When I told him this, it troubled him as much as anything that has occurred in this matter. I think we traced what it was that you had thought was a misrepresentation and concluded that there was a misunderstanding.

    I am transmitting herewith a copy of Mr. Williams' August 24, 2010 deposition taken by Mr. Harbin. I include with it an outline and a summary of the deposition. Because there is a fair amount

**Exhibit A**

Ltr. to John D. Fabian, Esq.
September 15, 2010
Page 4 of 4

of lawyer-talk and repetition in the deposition, I have used a green highlighter to cross through repetitions and non-testimonial parts in the transcript. I do this for no reason other than to facilitate surfacing the substance of the testimony, but, it goes without saying, that you decide to read or not read what you wish.

    Respectfully, I request that you read the deposition and rethink the evidence on which the claims in the indictment are based in with the deposition. It is not for me to suggest what, if any, weight you wish to give to what might be gleaned by you from those who conducted the investigation that led to Mr. Williams' indictment.

    All of this is imparted for what it is worth. Mr. Williams, as I have assured you, intends to follow through with the commitments he has made, including the commitment to plead guilty. But, obviously, if a guilty plea became unnecessary, this would be a thing for which Mr. Williams would be very grateful.

Very truly yours,

LARRY E. PARRISH, P.C.

By: *[signature]*
Larry E. Parrish

LEP/eb

cc: David Harbin, Esq., via facsimile (404) 562-9487
    Carroll Andre', Esq., via facsimile (901) 544-4230

f:\clients\williams.johnnie\correspondence\ltr. to john fabian 9.15.10.doc

**Exhibit A**

PARRISH & SHAW
AN ASSOCIATION OF ATTORNEYS

775 RIDGE LAKE BLVD.
SUITE 145
MEMPHIS, TN 38120

TELEPHONE 901-766-4388
FACSIMILE 901-766-4389
EMAIL PARRISH@PARRISHANDSHAW.COM

November 1, 2010

John D. Fabian, Esq.
Assistant United States Attorney
United States Attorney's Office
167 N. Main Street, Suite 800
Memphis, Tennessee 38103

*Via Email John.Fabian@usdoj.gov*

Re: **United States v. Williams,** No. 2:10cr20174-M1 (W.D. Tenn., Memphis)

John,

Thanks for the EPA cost report. I am not sure I fully understand all of its implications and certainly do not intend to dive into the line items. I have left that matter to be handled by Mr. Williams and his advisors. I have been told, but not verified, there are some disputed items and that those are being hashed out in a civil context. I have been told, but not verified, that EPA has made some concessions with respect to some charges. I do not know if those concessions are reflected in the report you provided me.

I know that we have cooperated in every way we know how with the civil EPA personnel handling this matter. Last week, three of the EPA officials spent all day in my office taking statements of witnesses whose names Mr. Williams had provided and who Mr. Williams made arrangements to meet with the EPA's people in my office. We provided a tape recorder and, to accommodate, transcribed, for EPA, the interview of each.

We also made arrangements for EPA to have two of its officials on site at American Drum for most of before the interviews. This was to spend another day (in addition to one spent in August) combing through the records of American Drum, with the assistance of Mr. Williams and others at American Drum who were even more familiar than Mr. Williams with the records.

In addition, as you know, on August 24, 2010, Mr. Williams spent almost a full day, in my office, giving a sworn oral deposition as he was questioned by Mr. Harbin, the attorney for EPA, with the participation of the two additional EPA investigators. I remained present for the entirety of that deposition and assisted in every way I knew how to make certain that anything known to Mr. Williams wasn't inadvertently left out.

As a result of the deposition, Mr. Williams was requested to help EPA find additional information for EPA. Mr. Williams found out the information by physically driving to various locations, retrieving the information and providing it, e.g., precise names, addresses, telephone

Exhibit A

Ltr. to John D. Fabian, Esq.
November 1, 2010
Page 2 of 2

numbers and contact persons of businesses that brought to American Drum, in the condition they were found at American Drum. We took the initiative of assisting Mr. Williams gather the additional information EPA needed.

  We also have assisted Mr. Harbin in acquiring from Mr. Williams a tolling agreement extending the civil statute of limitations into July 2011. As to the witnesses questioned last week in my office, the EPA asked one of them to sign a tolling agreement. Although I do not represent that witness, I explained to him what a tolling agreement was and why Mr. Williams signed the tolling agreement he signed.

  As I think I mentioned to you in my last correspondence, I was told by Mr. Harbin that EPA was not "after" Mr. Williams. I know that this was not an EPA official statement and has no binding effect on anybody. I believe it was a statement recognizing pragmatic realities. It is impossible to get blood out of a turnip, no matter how hard one squeezes. But, in an attempt to get blood out of the turnip, the turnip can be destroyed so that the salutary part of the turnip is lost in the process of trying to get from it what it is impossible to get. As said in my September 15 letter, Mr. Harbin said there were targets from whom EPA hoped to recover the costs.

          Very truly yours,

          LARRY E. PARRISH, P.C.

         By: _____
          Larry E. Parrish

LEP/er

cc: David Harbin, Esq., via facsimile (404) 562-9487
  Carroll Andre', Esq., via facsimile (901) 544-4230

Exhibit A

## PARRISH & SHAW
### AN ASSOCIATION OF ATTORNEYS

775 RIDGE LAKE BLVD.  
SUITE 145  
MEMPHIS, TN 38120

TELEPHONE 901-766-4388  
FACSIMILE 901-766-4389  
EMAIL PARRISH@PARRISHANDSHAW.COM

November 9, 2010

John D. Fabian, Esq.  
Assistant United States Attorney  
United States Attorney's Office  
167 N. Main Street, Suite 800  
Memphis, Tennessee 38103

*Via Email John.Fabian@usdoj.gov*

Re: **United States v. Williams,** No. 2:10cr20174-M1 (W.D. Tenn., Memphis)

Dear John:

Since shortly after my September 15 letter and our follow up conversation about it, I have felt compelled to write a follow up letter because I would like to try to get us on the same page. It was my intent in my September 15 letter to address prosecutorial discretion, and you seemed to reply basing your response on prosecutorial right. I fully understand you are under zero obligation to address that subject with me. However, I beg your indulgence as I further elaborate on behalf of Mr. Williams.

Because there is a tinge of doubt as to whether you might be offended by what follows, please take my word that no offense is intended. As I have measured the doubt some have expressed, I have reconsidered the decision in light of the Golden Rule.

There is no doubt that the government has a right, so to speak, to prosecute Mr. Williams; equally so, there is no doubt but that Mr. Williams is guilty, even if there is some relatively immaterial difference with respect to the quantum and magnitude of the offense. Nothing in my September 15 letter was intended to question any of this.

From a great deal of personal experience, I know that it is part of a prosecutor's day-in and day-out routine to make decisions about whether to or not to prosecute cases. In some instances, the evidence is there giving the prosecutor freedom to decide either way. I know that these decisions are often made based on policy priorities, workload demands or, sometimes by some prosecutors, philosophical predilections.

**Exhibit A**

Ltr. to John D. Fabian, Esq.
November 9, 2010
Page 2 of 3

As a result of my 1996 experience with the strip club prosecutions and nuisance abatement proceedings, I was introduced to a body of law of which I had not previously been aware. Because the cases applied to District Attorneys General and because the United States Attorney General is organized on a different basis, there is room to nitpick for differences. But, generally speaking, it seems generally applicable to be a rule to which all prosecutors are beholden in one way or to one degree or another. The rule is that prosecutors are duty-bound to decline prosecution of some provable violations of law, if surrounding facts and circumstances would dictate, all things considered, that a prosecution is not warranted by the public's interest.

This is, for Tennessee prosecutors, rooted in Tennessee constitutional law. This issue was raised in the context of a motion to dismiss certain indictments when I had been appointed as a special assistant District Attorney. A claim by the indictees, in support of a motion to dismiss, was that, because I was paid by a private citizen's group, the constitutional right of persons who were indicted with my participation in the decision to indict, violated the constitutional right of the defendants to have the elected District Attorney General, bound by a duty not to indict if the public's interest so indicated, based on the District Attorney General's assessment of all of the relevant circumstances, one, but only one, of which was the evidence of a violation. The Tennessee Court of Criminal Appeals affirmed the dismissal of the indictments by the trial court based, in large part, on the fact that my participation in the decisions to indict tainted the discretion of the District Attorney.

The point is that it is as much the duty of a prosecutor not to prosecute a provable offense as it is to prosecute a provable offense, if all of the surrounding facts and circumstances taken together, in the judgment of the prosecutor, would indicate that prosecution should not occur. Without having clue one about the "duty not to prosecute," I and others with whom I served as an AUSA, on occasion, chose not to prosecute, given certain circumstances, even though we had good reason to believe that the evidence, presented to a jury, would result in a guilty verdict.

To be completely candid, my proclivity as a prosecutor rarely dictated to me to make a decision not to prosecute. But, I had one experience that jolted me a little on this point. In Jackson, I presented to the grand jury, and the grand jury returned an indictment against a 78 year old man for having a half-pint of moonshine in his possession. I was successful in persuading a jury to return a guilty verdict, but the defendant appealed. I argued the appeal before a panel that included Judge Cecil. In the middle of my argument, Judge Cecil interrupted and said: **"Mr. Parrish. It appears to me that the mountain labored and gave forth a mouse."**

I hardly got back to Memphis before the *per curiam* opinion arrived reversing the conviction. This reversal had absolutely nothing to do with whether this defendant was guilty or that there was overwhelming evidence to support a guilty verdict. The *per curiam* opinion addressed nothing

**Exhibit A**

Ltr. to John D. Fabian, Esq.
November 9, 2010
Page 3 of 3

about the merits of the case or the sustainability of the guilty verdict. It was a short sentence announcing the reversal of the conviction. Lesson learned!

As I have become more and more familiar with facts and the law in Mr. Williams' case, I am more and more convinced that he engaged in a modicum of acts/omissions that make him guilty under the statutes. However, the image of that 78 year old defendant with his half-pint of moonshine keeps popping into my head. That defendant, beyond even an iota of doubt, was guilty of the crime for which he had been indicted, but ... .

Mr. Williams is not pleading for his "rights." Mr. Williams is pleading for mercy, and, humbly and respectfully, I suggest that, within the prosecutorial discretion of the United States Attorney, there is latitude to extend such mercy.

As stated, you are under no obligation to justify to Mr. Williams or to me the whys and the wherefores with respect to the exercise of the discretion of the United States Attorney in this case. But, presumably, there is no doubt that the United States Attorney has the discretion to terminate the prosecution of Mr. Williams.

All we humbly can do is ask that the discretionary decision to prosecute Mr. Williams be reconsidered.

                    Very truly yours,

                    LARRY E. PARRISH, P.C.

By: _____
       Larry E. Parrish

LEP/eb

cc: David Harbin, Esq., via facsimile (404) 562-9487
    Carroll Andre', Esq., via facsimile (901) 544-4230

f:\clients\williams.johnnie\correspondence\ltr. to john fabian 11.4.10.lc.doc

**Exhibit A**